**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RICHARD GILFUS, JR.,

                                    Petitioner,

        - v -                                              Civ. No. 9:04-CV-188
                                                                      (DNH/RFT)

JAMES VARGASON, District Attorney of Cayuga County,[1]

                                    Respondent.


JOHN GILFUS,

                                    Petitioner,

        - v -                                              Civ. No. 9:04-CV-189
                                                                      (DNH/RFT)

JAMES VARGASON, District Attorney of Cayuga County,

                                    Respondent.


PATRICIA GILFUS,

                                    Petitioner,

        - v -                                              Civ. No. 9:04-CV-190
                                                                      (DNH/RFT)

JAMES VARGASON, District Attorney of Cayuga County,

                                    Respondent.


**APPEARANCES:**                                  **OF COUNSEL:**

RICHARD GILFUS, JR.
Petitioner, *Pro Se*
1996 Sarr Road
Port Byron, NY 13140

---

[1] Vargason argues that he was incorrectly named as the Respondent in this action. *See* Part II.A.

PATRICIA GILFUS
Petitioner, *Pro Se*
1996 Sarr Road
Port Byron, NY 13140

JOHN GILFUS
Petitioner, *Pro Se*
1996 Sarr Road
Port Byron, NY 13140

HON. JAMES B. VARGASON                    CHRISTOPHER T. VALDINA, ESQ.
District Attorney for Cayuga County        Assistant District Attorney
Attorney for Respondent
154 Genesee Street
County Courthouse Annex
Auburn, NY 13091

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER[2]

*Pro se* Petitioners Richard Gilfus, Jr., John Gilfus, and Patricia Gilfus were convicted by a jury

of fourteen (14) counts of failure to provide proper sustenance to their animals, pursuant to N.Y. AGRIC.

& MKTS. LAW § 353.  Trial Transcript, dated Sept. 30, 2002 and Oct. 7-11, 2002 ("Trial Tr.") at pp.

4140-50.[3]  On November 22, 2002, Petitioners Richard and John Gilfus were sentenced to thirty (30)

days in jail, Patricia Gilfus was sentenced to sixty (60) days in jail, and all three received three (3) years

of probation.  Sentencing Tr., dated Nov. 22, 2002, at pp. 30-39.  Petitioners seek a Writ of *Habeas*

*Corpus* pursuant to 28 U.S.C. § 2254 on the following grounds: 1) the search warrant application was

---

[2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 and N.D.N.Y.L.R. 72.  Because the facts arising from the three state court cases and the issues raised in the three Petitions are identical, the cases were consolidated for the purposes of the report and recommendation on July 19, 2004, and case number 9:04-CV-188 was designated as the lead case.  Dkt. No. 14, Stipulation and Order, dated July 19, 2004.

[3] Pursuant to Local Rule 72.4(d), the pages of the state court record on appeal have been renumbered sequentially for ease of reference.

invalid; 2) the town justice and county court lacked jurisdiction to conduct any proceedings; 3) the indictments were never dated nor signed; 4) the trial court precluded exculpatory evidence while allowing impeachment evidence; 5) the trial court denied them the right to confront a witness, Thomas Adessa; and 6) they were found guilty of charges that deviated from the indictments.[4]  Dkt. No. 1, Pet. at ¶ 12.  For the reasons to follow, it is recommended that the Petitions be **DENIED**.

## I. BACKGROUND

In the Summer of 2000, the Cayuga County chapter of the Society for the Prevention of Cruelty to Animals ("SPCA") began to investigate complaints made about the conditions of animals residing on a farm owned by Petitioners in Cayuga County.  Hr'g Tr., dated Aug. 12, 2002, at pp. 2171-72; Trial Tr. at pp. 2783-84.  Petitioners apparently advertised their property as a "petting zoo."  Hr'g Tr. at p. 2173.  As a result of the investigation, the SPCA filed charges against Richard Gilfus, Sr., for violating New York's animal cruelty statute.  Diane M. Adsit Aff., dated Oct. 1, 2001, at p. 1972.  Richard was arrested on November 10, 2000, however, on April 2, 2001, an adjournment in contemplation of dismissal ("ACD") was signed by Mentz Town Justice Richard Warrick.  *Id.*; ACD, dated Apr. 2, 2001, at p. 1976.  The ACD was conditioned upon inspections by the SPCA once a month on the property, relinquishment of certain animals to the SPCA, as well as an agreement not to operate a petting zoo for the duration of the ACD.  ACD at p. 1976.

However, on November 28, 2001, Peace Officer Thomas Adessa applied for a search warrant

---

[4] The Court notes that grounds four through six appear under the supporting facts section for the ground that the indictments were not dated and signed.  *See* Pet. at ¶ 12(D).  However, since they are not in fact supporting facts for that ground raised, the Court will address those claims separately since they are briefly discussed in Petitioners' Memoranda of Law.  *See* Dkt. No. 2, Mem. of Law.  However, in addition to grounds four through six, Petitioners include a "supporting fact" in regards to forfeiture of their animals.  Pet. at ¶ 12(D).  Notwithstanding, since this issue is not discussed in any manner in the Memoranda of Law submitted, unlike grounds four through six, the Court will not address the forfeiture claim.  *See* Mem. of Law.

of the Gilfus farm stating that the condition of the animals and property remained unabated in violation of the New York State's Agriculture and Markets Law.  Search Warrant, dated Nov. 28, 1001, at pp. 46-56.  The warrant was signed the same day and executed on December 1, 2001, by nearly eighty (80) individuals, including those from the Cayuga County Sheriff's Office and SPCA.  Trial Tr. at pp. 2919-20.  These individuals removed the animals from the property, identified and photographed them, and then transported them to the Lollypop Farm, which is run by the Humane Society of Rochester and Monroe County, for treatment and rehabilitation.  *Id.* at pp. 2918-19 & 3066; Search Warrant Return, dated Dec. 12, 2001, at p. 60.[5]

Charges were not immediately filed after the animals were seized.  *See generally* Reply Mot., dated May 20, 2002, at p. 1962.  Instead, veterinarians and other staff at the Lollypop Farm began documenting the condition of each animal seized, which totaled approximately 321 animals, and conducted medical tests on them to determine the extent of their deterioration.  *Id.*; *see also* Search Warrant Return at p. 60; Trial Tr. at pp. 3843-44.  Subsequently, on March 14, 2002, the grand jury returned indictments against each Petitioner, each one containing 183 counts.  Indictments, dated Mar. 14, 2002, at pp. 146-237.  The three were then arraigned on March 28, 2002.  Arraignment Tr., dated Mar. 28, 2002, at pp. 242-54.

Thereafter, on August 12, 2002, an omnibus hearing was held wherein the suppression of evidence obtained through an allegedly questionable search warrant was discussed.  Hr'g Tr. at pp. 2125-39.  The defense raised the issue of whether Adessa had the requisite statutory authority to apply for a search warrant.  *Id.* at p. 2125.  The court found that pursuant to New York Criminal Procedure

---

[5] Another search warrant was issued on December 2, 2001, due to the fact that other animals remained on the property after the first warrant was issued that needed to be collected and taken to the Lollypop Farm.  Search Warrant, dated Dec. 2, 2001, at pp. 57-58.

Law as well as the Agricultural and Markets Law, Adessa was a peace officer who could effectuate a search and arrest. The town justice was made aware of the condition of the animals – which was the subject of the warrant – noted a complaint was lodged, and based upon such information, a warrant was issued by the justice. *Id.* at p. 2132. The court held that Adessa was appropriately designated to apply for the search warrant and later issued a separate written order, dated August 16, 2002, declaring the validity of the search warrant and denying the motion to suppress. *Id.*; Order, dated Aug. 16, 2002, at pp. 2278-80. Because Adessa did not have his notes available to him during the hearing, the court suppressed any statements made to Adessa by Petitioners. Hr'g Tr. at p. 2132; Order, dated Aug. 16, 2002, at pp. 2278-80.

On August 30, 2002, the court discussed with the prosecution and defense the motions in limine that were filed. Mot. in Limine, dated Aug. 30, 2002, at pp. 2303-24. With regard to the photographic and videotape evidence sought to be introduced at trial, the court ruled that only evidence photographed or filmed on or about the date the search warrant was executed (December 1, 2002), would be permitted. *Id.* at pp. 2312-14. The court noted that evidence collected a few days before and after the search warrant was executed would also be permitted. *Id.* The court reasoned that this date restriction was necessary because of the number of animals involved and the amount of evidence collected. *Id.* Both the prosecution and defense stated the ruling may adversely affect their cases, however, the court held steadfast to its ruling. *See id.* at pp. 2314-22.

On September 18, 2002, the trial court issued an order, based on motion, severing certain counts from the indictments, thus leaving only fourteen (14) of the 183 counts per person to be adjudicated at trial. Decision and Order, dated Sept. 18, 2002, at pp. 2479-81. On September 30, 2002, the trial commenced. Several prosecution witnesses, including veterinarians, testified about the condition of

the farm and animals at the time the search warrant was executed. *See generally* Trial Tr. Collectively, the witnesses testified that many of the animals were found to be in poor condition and some even deceased, that the animals did not receive enough food, suffered from neglect, and received inadequate shelter with hundreds of animals living in filthy, manure-filled barns. *See generally id.* at pp. 2712, 2714, 2730-31, 2826, 2855-56, 2881-89, 2912-15, 2928, 2954-60, 2962-67, 2971-74, 2979-96, 3010-19, 3031, 3044-50, 3066-67, 3154-58, 3174-76, 3198-217, 3240-80, & 3359-63. Additionally, several defense witnesses, including veterinarians, testified that at the time the search warrant was executed, the animals were in good condition and taken care of by Petitioners. *See generally id.* at pp. 3309-897. Adessa did not testify as a witness at trial for either the prosecution or defense. *See generally id.*

The trial concluded on October 11, 2002, and the court charged the jury on the elements of the crimes, including the mental culpability needed as specified in the indictments, and the jury was provided a verdict sheet for those crimes, which did not incorporate the *mens rea* aspect of the charges. *Id.* at pp. 4088-132; Verdict Sheets at pp. 4251-56. Each Petitioner was found guilty of fourteen (14) counts of failure to provide proper sustenance. Trial Tr. at pp. 4140-48.[6]

Petitioners then filed a N.Y. CRIM. PROC. LAW § 330.30 motion to set aside the verdict, again claiming, in part, that Adessa was never authorized to apply for a search warrant and, therefore, all evidence should have been suppressed. 330.30 Motion, dated Oct. 29, 2002, at pp. 4257-69. On November 22, 2002, the trial court ruled that Adessa's status was not relevant to a § 330.30 motion and denied said motion. *Id.* at pp. 14-15 & 19-20. The court, nevertheless, reiterated that it found Adessa to have the requisite authority needed to apply for the search warrant. *Id.* at p. 15. Judgment was entered by the Cayuga County Court and on November 22, 2002, Petitioners were sentenced. Richard

---

[6] On December 5, 2002, and January 7, 2003, respectively, the trial court dismissed the remaining counts in the indictments in the interest of justice. *See* Orders, dated Dec. 5, 2002, & Jan. 7, 2003, at pp. 42-45.

and John Gilfus received a sentence of thirty (30) days in jail while Patricia Gilfus received a sentence of sixty (60) days in jail, and all three received three (3) years of probation.[7]

Petitioners then filed a direct appeal of their convictions, raising the following issues: 1) the search warrant was defective because Adessa did not have proper authority to apply for such a warrant, it was stale, it failed to comply with New York's Criminal Procedure Law, and all evidence should have been suppressed as a result; 2) the convictions were divergent from the indictments; 3) the trial court precluded exculpatory evidence; and 4) Petitioners were improperly subjected to forfeiture of their animals. *See* App. Br. for Pet'rs.  Judgment was affirmed on appeal to the New York Supreme Court, Appellate Division, Fourth Department on February 11, 2004.  *People v. Gilfus*, 771 N.Y.S.2d 452 (N.Y. App. Div. 4th Dep't 2004); 772 N.Y.S.2d 164 (N.Y. App. Div. 4th Dep't 2004).  Leave to appeal

_____

[7] The Court notes that based on the record provided, Petitioners were sentenced on November 22, 2002.  The jail sentences, however, were stayed on November 27, 2002, though the imposition of the term of probation was not stayed. *See* Sentencing Tr., dated Nov. 22, 2002, at pp. 30-39; Decision, dated Nov. 27, 2002, at p. 22A.  On May 29, 2003, the New York Supreme Court, Appellate Division, Fourth Department extended the November 27, 2002 stay to September 19, 2003. Order, dated May 29, 2003, at p. 25A.  On February 11, 2004, the Appellate Division rendered its decision and remitted the proceedings back to the Cayuga County Court for proceedings pursuant to N.Y. CRIM. PROC. LAW § 460.50, which states:

> [w]here the defendant is at liberty during the pendency of an appeal as a result of an order issued pursuant to this section, the intermediate appellate court, upon affirmance of the judgment, must by appropriate certificate remit the case to the criminal court in which such judgment was entered.  The criminal court must, upon at least two days notice to the defendant, his surety and his attorney, promptly direct the defendant to surrender himself to the criminal court in order that execution of the judgment be commenced or resumed, and if necessary the criminal court may issue a bench warrant to secure his appearance.

N.Y. CRIM. PROC. LAW § 460.50(5); *People v. Gilfus*, 771 N.Y.S.2d 452 (N.Y. App. Div. 4th Dep't 2004); 772 N.Y.S.2d 164, 165 (N.Y. App. Div. 4th Dep't 2004).

Notwithstanding, it is unclear whether the sentences were served after the stay expired on September 19, 2003, since the record presented does not show whether the stay was extended any further, or if the sentences were served after the Appellate Division rendered its decision.  What is clear, however, is that Petitioners' probation terms expired on November 22, 2005 and the instant Petitions were filed on February 23, 2004, purportedly while the probation portion of their sentences were being served.  *See* Dkt. Nos. 1, Pet., & 13, Answer at ¶ 8; *see also* 9:04-CV-189, Dkt. Nos. 1, Pet., & 11, Answer at ¶ 8; 9:04-CV-190, Dkt. Nos. 1, Pet., & 11, Answer at ¶ 8.  Thus, it appears that at the time the Petitions were filed, the Court had proper jurisdiction as it appears that 28 U.S.C. § 2241 "in custody" requirement was satisfied at the inception.  Since, however, it is equally clear that the Petitioners are no longer in custody, the Court must assess whether this case presents a case or controversy.  We find that it does since Petitioners can demonstrate that they suffer from a "concrete and continuing injury," or a "collateral consequence" of the alleged violation.  *Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998) (citing *Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968) and further noting that a challenge to the conviction itself carries the presumption that a collateral consequence exists).

to the Court of Appeals was denied on February 17, 2004. *People v. Gilfus*, 808 N.E.2d 1285 (N.Y. Ct. of App. 2004). This Petition followed.

## II. DISCUSSION

### A. Proper Respondent

Respondent argues that as the District Attorney for Cayuga County, he was improperly named as Respondent in this action as he does not have "custody" over Petitioners or anyone else under N.Y. COUNTY LAW § 700. Dkt. No. 13, Resp't Mem. of Law at p. 8. Thus, Vargason argues that the Petitions should be dismissed for lack of jurisdiction. *Id.*

According to Rule 2(a) of the Rules Governing § 2254 Cases, if a petitioner is "currently in custody under a state court judgment, the petition must name as respondent the state officer who has custody." The Advisory Committee Notes ("ACN") regarding this Rule state that the proper person to be named in such a circumstance is either the warden of the institution, if in federal custody, or the chief officer in charge of the state penal institution. ACN, 1976 Adoption, Subdivision (a). The ACN comments that if a petitioner is instead on probation or parole at the time of filing, then the respondent shall be the probation or parole officer supervising the petitioner and the official in charge of the parole or probation agency, or the state correctional agency. *Id.* at Subdivision (b)(2). However, if the petitioner is neither in jail, prison, nor actual physical restraint and is not on either probation or parole, then the appropriate respondent should be the attorney general of the state where the action was taken. *Id.* at Subdivision (b)(3).

In this case, it is difficult to determine precisely when Petitioners were released from jail, though it is evident that Petitioners were at least serving the three years of probation when the Petitions were filed. Thus, the proper Respondent would be either the officer in charge of the jail or the

probation supervisor along with the official in charge of the probation agency.  In either scenario, the Cayuga County District Attorney is not the proper Respondent in this case.  Despite Vargason's proclamation that the Petitions should be dismissed because he was improperly named as the Respondent, courts in the Second Circuit have declined to dismiss petitions in this regard because the defect can be cured through an amendment.  *See Urena v. New York*, 2000 U.S. Dist. Lexis 16123, at *8-9 (S.D.N.Y. Nov. 6, 2000); *De Sousa v. Abrams*, 467 F. Supp. 511, 512-13 (E.D.N.Y. 1979); *see also Scherl v. United States Parole Comm'n*, 1993 WL 258736, at *2 (S.D.N.Y. July 7, 1993) (citing *De Sousa*).

In the interests of justice, and because the Court recommends that the Petitions be denied on the merits in spite of the misnomer of the proper Respondent, the Court will briefly analyze the claims raised.  No prejudice befalls either the proper Respondent nor Petitioners since Vargason has argued the merits of the claims raised in the Petitions.

### B.  Standard of Review

According to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant *habeas* relief to a state prisoner claim unless the state courts adjudicated the merits of the claim and such adjudication either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001); *see also Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003).

The AEDPA also requires that in any such proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Boyette*, 246

F.3d at 88 (quoting § 2254(e)(1)).

### C.  Search Warrant Deficiency

Petitioners claim that Adessa did not have the authority to apply for a search warrant because he had not received the training required nor did he take an oath as a peace officer.  Pet. at ¶ 12(A).  The Appellate Division rejected Petitioner's contention that the motion to suppress should have been granted because Adessa was authorized to apply for the search warrant and completed the training required under New York Law.  *People v. Gilfus*, 772 N.Y.S.2d at 165.

A petitioner is not entitled to *habeas* relief if the state courts provided "an opportunity for full and fair litigation" of a claim under the Fourth Amendment.  *Stone v. Powell*, 428 U.S. 465, 482 (1976).  Thus, a federal court may only review a claim based on the Fourth Amendment "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process."  *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977)); *Campbell v. Greene*, 440 F. Supp. 2d 125, 138 (N.D.N.Y. 2006) (citing *Capellan*).  New York Law provides a corrective procedure for Fourth Amendment claims in the form of a suppression hearing.  *See* CRIM. PROC. LAW §§ 710.10 *et seq.*; *see also Capellan v. Riley*, 975 F.2d at 70 n.1 (holding that "federal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate") (citations omitted); *Campbell v. Greene*, 440 F. Supp. 2d at 138.

Here, although Petitioners did not receive a separate suppression hearing to discuss the search warrant, Petitioners were provided with an opportunity to argue their suppression motion in the omnibus hearing and the trial court found that Adessa had the proper authority to obtain a search

warrant.  *See* Hr'g Tr. at p. 2132.  The Second Circuit has held that "once it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief."  *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002).  Furthermore, a "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process."  *Capellan v. Riley*, 975 F.2d at 72.  Petitioners' assertion that their Fourth Amendment rights were violated is foreclosed.  *See Stone v. Powell*, 428 U.S. 465 (1976) (cited in *Hernandez v. Filion*, 2005 WL 3164063, at *5-6 (S.D.N.Y. Nov. 29, 2005)); *see also Capellan v. Riley*, 975 F.2d at 70; *Campbell v. Greene*, 440 F. Supp. 2d at 138-39.  Additionally, the Appellate Division's decision was not contrary to, nor did it involve an unreasonable application of, clearly established federal law.

Therefore, it is recommended that the Petitions be **denied** on this ground.

### D.  Lack of Authority

Petitioners claim that the town justice and county court lacked the authority to conduct any proceedings because the justice failed to file his oath.  Pet. at ¶¶ 12(B)-(C).

A state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for *habeas corpus*.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  To satisfy the exhaustion requirement with respect to a claim, a defendant must "fairly present" that claim to the state courts so that a fair opportunity is provided to that court to consider the claim and correct the asserted constitutional defect.  *Strogov v. Attorney Gen. of the State of New York*, 191 F.3d 188, 191 (2d Cir. 1999) (citation omitted).  "A federal constitutional claim has not been fairly presented to the State courts unless the petitioner has informed those courts of all the 'essential factual allegations' and

'essentially the same legal doctrine he asserts in his federal petition.'" *Id.* (citing *Daye v. Attorney Gen. of the State of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (further citing *Picard v. Connor*, 404 U.S. 270, 276-277 (1971)).

When a claim has never been presented to a state court, a federal court may find that there is an absence of available state corrective process under § 2254(b) "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *see also Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000) (federal court may address merits of a *habeas* petition containing unexhausted claims where there is no further state proceeding for the petitioner to pursue or where further pursuit would be futile).

This asserted claim could have been raised in Petitioners' appeals to the Appellate Division. Moreover, Petitioners cannot now file a second appeal with the Fourth Department as to these claims because a criminal defendant is "entitled to one (and only one) appeal" to the Appellate Division. N.Y. CRIM PROC. LAW § 450.10(1); N.Y. Ct. Rules § 500.10(a); *see also Aparicio v. Artuz*, 269 F.3d at 91. Therefore, this claim is deemed exhausted for purposes of these *Habeas* Applications. *Spence v. Superintendent Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *Strogov v. Attorney Gen. of the State of New York*, 191 F.3d at 193 (failure to raise claim based upon matters contained within record on direct review to Appellate Division constitutes procedural default of such claim); *Senor v. Greiner*, 2002 WL 31102612, at *10 (E.D.N.Y. Sept. 18, 2002).

The Court's review of the substance of this procedurally defaulted claim is conditioned upon Petitioners demonstrating cause for their default and resulting prejudice, or, alternatively, presenting

evidence to show that they are "actually innocent" of the crimes of which they were found guilty.[8]
*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Ramirez v. Attorney Gen. of the State of New York*,
280 F.3d 87, 94  (2d Cir. 2001); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000)
(citing *Coleman*); *Strogov v. Attorney Gen. of the State of New York*, 191 F.3d at 193-94.

To establish legal cause for a petitioner's procedural default, he or she must show that some
objective external factor impeded his or her ability to comply with New York's procedural rules.
*Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).
Examples of external factors include interference by officials, ineffective assistance of counsel, or that
"the factual or legal basis for a claim was not reasonably available" at trial nor on direct appeal.
*Murray v. Carrier*, 477 U.S. at 488.  Attorney ignorance or inadvertence is not cause, however, since
the attorney is considered the petitioner's agent when acting, or failing to act, in furtherance of the
litigation; thus, the petitioner must "bear the risk of attorney error."  *Coleman v. Thompson*, 501 U.S.
at 753 (quoting *Murray v. Carrier*, 477 U.S. at 488).

Petitioners have not demonstrated legal cause for their procedural default regarding the above
claim.  Since they cannot establish such cause, this Court need not decide whether they also suffered
actual prejudice as to this claim because federal *habeas* relief on the basis of a procedurally defaulted
claim is unavailable unless **both** cause and prejudice are demonstrated.  *See, e.g.*, *Stepney v. Lopes*, 760
F.2d 40, 45 (2d Cir. 1985); *Pou v. Keane*, 977 F. Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.) (citing
*Stepney*).  Moreover, since Petitioners have not established that they are actually innocent of any of the
crimes of which they were convicted, the Court recommends that the Petitions be **denied** as to this

---

[8] This final exception, however, is intended for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see also Lebron v. Mann*, 40 F.3d 561, 564 (2d Cir. 1994).

ground for this procedural reason.[9]

### E.  Indictment

Petitioners claim that they were improperly convicted because the indictments were never signed nor dated.  Pet. at ¶ 12(D).  The Appellate Division did not address this issue.  *See People v. Gilfus*, 772 N.Y.S.2d 164.

As stated previously, a petitioner must fairly present his claims to the state court.  *See Strogov v. Attorney Gen. of the State of New York*, 191 F.3d. at 191.  In this case, Petitioners did not raise this issue as a separate ground for appeal, but instead, raised this issue as a "side note."  App. Br. for Pet'rs at p. 50.  Specifically, Petitioners stated "[a]s a side note the Indictments themselves were also defective and thus not proper foundations for Appellants' convictions.  Therein, there are no dates filled in at all and they are not signed by the County Clerk and/or the Clerk of the Court."  *Id.*  This mere mention of the alleged imperfections in the indictment may have led the Appellate Division to overlook the issue.

If a state appellate court's determination of a criminal defendant's appeal does not mention or "contain any language, general or specific, indicating that [the] claims [raised] were considered and denied on the merits[,]" then the deferential standard supplied by the AEDPA is not applicable.  *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002).   Instead, the federal courts must employ the pre-AEDPA standard and conduct a *de novo* review.  *Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003) (citing *Aparicio v. Artuz*, 269 F.3d at 93); *see also Norde v. Keane*, 294 F.3d at 411.

Generally, challenges to the sufficiency of a state indictment are not cognizable on *habeas* review.  *See United States ex rel. Mintzer v. Dros*, 403 F.2d 42, 43 (2d Cir. 1967); *Marcus v. Conway*,

---

[9] Notwithstanding, the Court notes that the record presented contains the oath taken by the justice as well as a copy of the oath taken by the trial judge.  *See* Resp. Supp. Rec., Oath of Justice at pp. 4A-16A & 18A-20A; Oath of Trial Judge at p. 2A.

2007 WL 1974305, at 4 (S.D.N.Y. July 5, 2007); *Roberts v. Scully*, 875 F. Supp. 182, 194 (S.D.N.Y.),

*aff'd*, 71 F.3d 406 (1995).  A defect in a state indictment can form the basis for federal *habeas* relief

only if the indictment falls below basic constitutional standards.  *See Beverly v. Walker*, 899 F. Supp.

900, 908 (N.D.N.Y. 1995) (citing *Carroll v. Hoke*, 695 F. Supp. 1435, 1438 (E.D.N.Y.), *aff'd*, 880 F.2d

1318 (2d Cir. 1989)).  An indictment passes constitutional muster if "it charges a crime [1] with

sufficient precision to inform the defendant of the charges he must meet and [2] with enough detail that

he may plead double jeopardy in a future prosecution based on the same set of events."  *De Vonish v.

Keane*, 19 F.3d 107, 108 (2d Cir. 1994) (internal quotation marks and citation omitted); *see also

Beverly v. Walker*, 899 F. Supp. at 909 (quoting *De Vonish*); *Carroll v. Hoke*, 695 F. Supp. at 1438

(noting that an indictment is constitutionally sufficient if it informs "the accused, in general terms, of

the time, place and essential elements of the alleged crime") (citations omitted).

Here, it is clear that the indictments against Petitioners were constitutionally adequate and

provided them with sufficient detail to inform them of the charges so that they could plead double

jeopardy in the future.  Indictments, dated Mar. 14, 2002, at pp. 146-237.  Specifically, the indictments

provided, in general terms, the time, place, and elements of the alleged charges.  *Id.*

Therefore, it is recommended that the Petitions be **denied** on this ground.[10]

### F.  Exculpatory and Impeaching Evidence

Petitioners assert that the trial court erred when it prevented them from introducing photographs

and videotape of the condition of the animals and farm from November 1, 2001, until the day the search

---

[10] Moreover, as to Petitioners' assertion that the indictments were not properly signed and dated, the record demonstrates that the indictments were in fact properly signed and dated under New York law.  Pursuant to N.Y. CRIM. PROC. LAW §§ 200.50(8) & (9), an indictment must be signed by the foreperson of the grand jury and the district attorney. Here, the indictments were signed by both the foreperson and the district attorney as well as date stamped.  *See* Indictments, dated March 14, 2002, at pp. 146-237; Cover of Indictments, dated June 24, 2004, at pp. 53A-55A.

warrant was executed on December 1, 2001.  Pet. at ¶ 12(D); Dkt. No. 2, Mem. of Law at pp. 19-21.

The Appellate Division held that the issue was not properly preserved for review, but nevertheless

found this contention to be without merit.  *People v. Gilfus*, 772 N.Y.S.2d at 166.

Alleged erroneous evidentiary rulings do not automatically rise to the level of constitutional

error sufficient to warrant the issuance of a writ of *habeas corpus*.  *Estelle v. McGuire,* 502 U.S. 62,

72-75 (1991) (citation omitted); *see also Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983).  Rather,

erroneous exclusion of evidence warrants *habeas* relief only if the omission deprived the petitioner of

a fundamentally fair trial.  *Estelle v. McGuire,* 502 U.S. at 72-75; *see also Taylor v. Curry*, 708 F.2d

at 891 (citing *Chambers v. Mississippi*, 410 U.S. 284, 302-03 (1973)) (further citations omitted).  In

order to determine whether erroneous state court evidentiary rulings denied a petitioner a fair trial, the

court must examine whether the allegedly excluded evidence would have created "a reasonable doubt

that did not otherwise exist."  *United States v. Agurs*, 427 U.S. 97, 112 (1976); *Hawkins v. Costello*,

460 F.3d 238, 244 (2d Cir. 2006); *Taylor v. Curry*, 708 F.2d at 891.

The Second Circuit has noted that a determination of whether a constitutional error occurred

depends on "whether the excluded evidence was *material* to the presentation of the defense[.]" *Taylor*

*v. Curry*, 708 F.2d at 891 (emphasis in original).  As stated by the Supreme Court,

> The proper standard of materiality must reflect our overriding concern with the justice
> of the finding of guilt.  Such a finding is permissible only if supported by evidence
> establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted
> evidence creates a reasonable doubt that did not otherwise exist, constitutional error has
> been committed.  This means that the omission must be evaluated in the context of the
> entire record.  If there is no reasonable doubt about guilt whether or not the additional
> evidence is considered, there is no justification for a new trial.  On the other hand, if the
> verdict is already of questionable validity, additional evidence of relatively minor
> importance might be sufficient to create a reasonable doubt.

*United States v. Agurs*, 427 U.S. at 112-13.

Here, the trial court's ruling did not deprive Petitioners of a fundamentally fair trial.  Because

of the voluminous nature of the evidence, the trial court limited the evidence to be introduced to the date of, and some days surrounding, the execution of the search warrant.  *See* Mot. in Limine at pp. 2312-14.  This limitation was not only extended to the defense, but to the prosecution as well.  *Id.* at pp. 2314-22.  While both admitted the ruling could adversely affect their cases, the indictments alleged that the animals did not receive proper sustenance from the end of November 2001 through December 1, 2001.  Thus, the trial court's limitation of the evidence to be admitted was in line with the time frame set forth in the indictments.  *See* Indictments at pp. 146-237.  Notwithstanding, during the trial, the defense was permitted to elicit from its witnesses some of the conditions of the animals in a more expansive time frame than encompassed in the ruling in order to contradict the evidence put forth by the prosecution.  *See generally* Trial Tr. at pp. 3390-897.  Additionally, Petitioners do not explain what erroneous impeachment evidence was presented at trial that hindered their defense.  *See* Mem. of Law at pp. 19-22.

Thus, viewing the omission of evidence in the context of the entire record, the verdict was not of questionable validity and the omitted evidence would not have created a reasonable doubt about Petitioners' guilt.  There was a great deal of evidence presented that the animals were neglected and in poor condition on December 1, 2001, and any other evidence presented from different time periods, even early in the month of November 2001, would not have been relevant to that charge.  *See id.* at pp. 2712, 2714, 2730-31, 2826, 2855-56, 2881-89, 2912-15, 2928, 2954-60, 2962-67, 2971-74, 2979-96, 3010-19, 3031, 3044-50, 3066-67, 3154-58, 3174-76, 3198-217, 3240-80, & 3359-63.  Therefore, no constitutional error occurred as a result of the trial court's ruling and the Appellate Division's decision was not contrary to, nor did not involve an unreasonable application of, clearly established federal law.

Accordingly, it is recommended that the Petitions be **denied** on this ground.

*-17-*

## G.  Denial of Witness

Petitioners claim that the trial court erred by denying their right to call Adessa as a witness during trial.  Pet. at ¶ 12(D); Mem. of Law at p. 16.[11]  The Appellate Division found this issue was not properly preserved but, in any event, this contention was without merit.  *People v. Gilfus*, 772 N.Y.S.2d at 166.

The Supreme Court has stated that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense."  *Chambers v. Mississippi,* 410 U.S. at 302 (citations omitted).  Specifically, "the rights to confront and cross-examine witnesses in one's own behalf have long been recognized as essential to due process."  *Id.* at 294.  However, as noted previously, alleged erroneous state evidentiary rulings in regards to the right to present witnesses will warrant *habeas* relief only if the omission deprived the petitioner of a fundamentally fair trial.  *Estelle v. McGuire,* 502 U.S. at 72-75.  Furthermore, the court must determine if the allegedly excluded evidence would have created "a reasonable doubt that did not otherwise exist."  *United States v. Agurs*, 427 U.S. at 112.

Petitioners argue that the basis for the trial court's exclusion of Adessa's testimony was because his testimony was "not important."  *See* Mem. of Law at p. 16.  This is not entirely correct.  Suppression of evidence obtained through Adessa's search warrant was discussed at the omnibus hearing, held on August 12, 2002.  In addition to finding that Adessa had the requisite statutory authority to apply for a search warrant and that the warrant was valid, the trial court ruled that any statements Petitioners made to Adessa would be suppressed due to the fact that Adessa did not have his notes available to him.  Order, dated Aug. 16, 2002, at pp. 2278-80.  Then, in a post-verdict motion,

---

[11] The Court notes that Petitioners indiscriminately include one brief paragraph in their Memoranda of Law regarding the trial court's refusal to allow Adessa to testify at trial in the midst of arguing that a suppression hearing should have been conducted in order to dispute Adessa's authority to apply for the search warrant.  *See* Mem. of Law at p. 16.

Petitioners again claimed that Adessa was never authorized to apply for a search warrant and all evidence should have been suppressed.  330.30 Motion, dated Oct. 29, 2002, at pp. 4257-69.  In addressing this motion, the trial court ruled that Adess'as status was not relevant to a § 330.30 motion. *Id*. at pp. 14-15.

This alleged error in the evidentiary ruling did not deny Petitioners of a fundamentally fair trial. Adessa's testimony would have added nothing more to that of the witnesses that did testify at trial. Furthermore, the defense presented several witnesses on the Petitioners' behalf to refute the conditions observed at the time the search warrant was executed.  Based upon the record, the exclusion of Adessa's testimony would not have created reasonable doubt that did not otherwise exist.  Thus, the Appellate Division's determination was not contrary to, nor did not involve an unreasonable application of, clearly established federal law.

Therefore, it is recommended that the Petitions be **denied** on this ground.

## H.  Divergence of Charges

Petitioners claim that because the mental culpability needed for the charges was not provided on the verdict sheets, they were convicted of crimes not presented in the indictment.  *See* Pet. at ¶ 12(D); Mem. of Law at pp. 11-14.  The Appellate Division held that Petitioners failed to preserve the issue for review, but, in any event, the contention was without merit because the court instructed the jurors in accordance with the description of offenses in the indictment and the verdict sheet did not differ from the descriptions.  *People v. Gilfus*, 772 N.Y.S.2d at 166.

Petitioners claim that under the Sixth Amendment, they have a right to "be informed of the nature and cause of the accusation" and because the verdict sheets were missing the mental culpability aspect, they were denied the opportunity to present a proper defense.  Mem. of Law at p. 12.   This

claim is wholly without merit.  While it is true that the right to present a defense is guaranteed by the

Sixth and Fourteenth Amendments, there is absolutely no evidence on the record that the exclusion of

the mental culpability requirement from the verdict sheet denied Petitioners this right.  *See Gilmore v.*

*Taylor,* 508 U.S. 333, 343 (1993) (citing *Crane v. Kentucky,* 476 U.S. 683, 690 (1986)); *Chambers v.*

*Mississippi,* 410 U.S. at 294 (stating that "[t]he right of an accused in a criminal trial to due process is,

in essence, the right to a fair opportunity to defend against the State's accusations"); *Wade v. Mantello,*

333 F.3d 51, 57 (2d Cir. 2003) (noting that "Supreme Court precedent makes clear that a criminal

defendant is entitled by the Constitution to a meaningful opportunity to present a complete defense").

Petitioners were aware from the time the indictments were handed down of the nature of the charges

filed against them and the requisite culpability the prosecution would have to establish at trial.  *See*

Indictments at pp. 146-237.  The defense then presented witnesses to rebut the prosecution's attempt

to show that Petitioners possessed the *mens rea* needed for a conviction.  *See* Trial Tr. at pp. 3309-897.

The jury was also provided with a charge by the trial court that described the elements of the crime,

including the mental state, as provided for in the indictment.  *Id.* at pp. 4088-132.  The fact that the

verdict sheet did not include the mental state has no correlation to the claim that Petitioners could not

present a defense since they had every opportunity to do so based on the indictments.  Thus, no

constitutional violation occurred and the Appellate Division's finding was not contrary to, nor an

unreasonable application of, clearly established federal law.

Therefore, it is recommended that the Petitions be **denied** on this ground.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that each Petition in the above captioned actions for a Writ of *Habeas*

*Corpus* (Dkt. Nos. 1) be **DENIED**; and it is further

ORDERED, that a copy of this Report-Recommendation and Order be filed in each of the above captioned-actions; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).


Date:   October 19, 2007
       Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge